## SETTLEMENT AGREEMENT AND GENERAL RELEASE

This Settlement Agreement and General Release (the "Agreement") is hereby entered into by and between Fannie K. Bloodworth ("Bloodworth") and Tanika Thomas-Cooley ("Thomas-Cooley") (collectively "Plaintiffs"), on the one hand, and Elks Aidmore, Incorporated (the "Company"), Abe Wilkinson ("Wilkinson"), Andrea Fronek ("Fronek"), and Vickey Hale ("Hale"), (collectively "Defendants") on the other hand, as of the Effective Date (defined below). Each of Plaintiffs and Defendants are referred to herein individually as a "Party," and collectively, as the "Parties." As used herein, the phrases "this Agreement," "hereto," "hereunder," and phrases of like import shall mean this Agreement. All capitalized terms shall have the meanings ascribed to them in the Agreement.

WHEREAS, Bloodworth was employed with the Company from November 15, 2012 through March 3, 2016; and

WHEREAS, Thomas-Cooley was employed with the Company from December 2012 through May 23, 2016; and

WHEREAS, on February 2, 2017, Plaintiffs filed a Complaint for Damages against Defendants in the United States District Court for the Northern District of Georgia (the "Court") captioned as *Fannie K. Bloodworth, Tanika Thomas-Cooley v. Elks Aidmore, Incorporated, Abe Wilkinson, Andrea Froneak, Vickie Hall*, Case No. 1:17-cv-00409-AT, alleging violations of the Fair Labor Standards Act of 1938 ("FLSA") (the "Litigation"); and

WHEREAS, Defendants deny Plaintiffs' claims and allegations in the Litigation and deny liability to Plaintiffs; and

WHEREAS, the Parties desire to finally and forever resolve all disputed matters between them existing as of the date of this Agreement, whether or not raised in the Litigation; and

WHEREAS, the Parties have entered into this Agreement to bring about such resolution;

NOW, THEREFORE, the Parties, with the intent of totally ending and forever foreclosing all matters or potential matters in dispute between the Parties up to the time of this Agreement, thereby assuring peace between the Parties based on such matters, in return for the mutual promises and consideration contained herein, the sufficiency of which is expressly acknowledged, agree as follows:

1. **Settlement Payment to Bloodworth.** Provided that Bloodworth executes, and does not revoke, this Agreement and the Court has approved the settlement, the Company shall pay Bloodworth the amount of Five Thousand Six Hundred and No/100ths Dollars ($5,600.00), (the "Bloodworth Gross Settlement Payment") no later than five (5) business days after the Effective Date, provided that Bloodworth does not first revoke this Agreement as set forth therein. The Bloodworth Gross Settlement Payment shall be allocated as follows:

    (i) The gross sum of Three Hundred Sixty-Five and No/100 Dollars ($365.00) which shall constitute the entire amount payable to Bloodworth payment for any alleged unpaid wages (including overtime compensation), back pay, interest, and any similar forms of relief she may have sought in the Litigation. The Company shall deduct applicable taxes, withholdings and deductions from this portion of the

Bloodworth Gross Settlement Payment in accordance with Bloodworth's latest issued W-4, and shall include this amount on a Form W-2 issued by the Company to Bloodworth at year-end. The Parties also acknowledge that the Company previously issued and Bloodworth accepted the sum of Four Thousand Two Hundred Forty-Seven and 50/100ths Dollars ($4,247.50) for alleged unpaid wages.

(ii) The sum of Two Thousand Four Hundred Thirty-Five and No/100ths Dollars ($2,435.00), which shall constitute the entire amount payable to her for alleged liquidated damages she may have sought in the Litigation. The Company shall not deduct any taxes, withholdings or deductions from this portion of the Bloodworth Gross Settlement Payment, and shall record this amount on a Form 1099 issued by the Company to Bloodworth at year-end.

(iii) The sum of Five Hundred and No/100ths Dollars ($500.00), which shall constitute the entire amount payable to her for her Released Claims, as that term is defined in Section 4.

(iv) The sum of Two Thousand Three Hundred and No/100ths Dollars ($2,300.00) as payment for Bloodworth's attorney's fees and litigation expenses, made payable to Bloodworth's counsel "The Vaughn Law Firm, LLC." The Company shall not deduct any taxes, withholdings or deductions from this portion of the Bloodworth Gross Settlement Payment, and shall record this amount on a Form 1099 issued by the Company to Bloodworth's counsel at year-end.

Section 1(i) of the Bloodworth Gross Settlement Payment shall be due and payable to Bloodworth. Sections 1(ii), 1(iii), and 1(iv) of the Bloodworth Gross Settlement Payment shall be due and payable to the Vaughn Law Firm, LLC and be provided to the Vaughn Law Firm, LLC attorney trust account.

2. **Settlement Payment to Thomas-Cooley.** Provided that Thomas-Cooley executes, and does not revoke, this Agreement, the Company shall pay Thomas-Cooley the amount of Five Thousand One Hundred and No/100ths Dollars ($5,100.00), less applicable taxes, withholdings or deductions (the "Thomas-Cooley Gross Settlement Payment") no later than five (5) business days after the Effective Date, provided that Thomas-Cooley does not first revoke this Agreement as set forth therein. The Thomas-Cooley Gross Settlement Payment shall be allocated as follows:

(i) The gross sum of One Thousand Five Hundred Sixty and No/100ths Dollars ($1,560.00) made payable to "Tanika Thomas-Cooley," which shall constitute the entire amount payable to Thomas-Cooley for any alleged unpaid wages (including overtime compensation), back pay, interest, and any similar forms of relief she may have sought in the Litigation. The Company shall deduct applicable taxes, withholdings and deductions from this portion of the Thomas-Cooley Gross Settlement Payment in accordance with Thomas-Cooley's latest issued W-4, and shall record this amount on a Form W-2 issued by the Company to Thomas-Cooley at year-end.

2

(ii) The sum of Seven Hundred Forty and No/100ths Dollars ($740.00), which shall constitute the entire amount payable to her for alleged liquidated damages she may have sought in the Litigation. The Company shall not deduct any taxes, withholdings or deductions from this portion of the Thomas-Cooley Gross Settlement Payment, and shall record this amount on a Form 1099 issued by the Company to Thomas-Cooley at year-end.

(iii) The sum of Five Hundred and No/100ths Dollars ($500.00), which shall constitute the entire amount payable to her for her Released Claims, as that term is defined in Section 4.

(iv) The sum of Two Thousand Three Hundred and No/100ths Dollars ($2,300.00) as payment for Thomas-Cooley's attorney's fees and litigation expenses, made payable to Thomas-Cooley's counsel "The Vaughn Law Firm, LLC." The Company shall not deduct any taxes, withholdings or deductions from this portion of the Thomas-Cooley Gross Settlement Payment, and shall record this amount on a Form 1099 issued by the Company to Thomas-Cooley's counsel at year-end.

Section 2(i) of the Thomas-Cooley Gross Settlement Payment shall be due and payable to Thomas-Cooley. Sections 2(ii), 2(iii), and 2(iv) of the Thomas-Cooley Gross Settlement Payment shall be due and payable to the Vaughn Law Firm, LLC and be provided to the Vaughn Law Firm, LLC attorney trust account.

3. **Acknowledgments Regarding Settlement Payments**. Except for Defendant's requirement to pay Federal payroll taxes, State payroll taxes, Medicare Tax, and Social Security Tax on the payments described in Sections 1(i) and 2(i), Plaintiffs assume full responsibility to all federal, state and local taxing authorities and agree to indemnify and hold the Defendants harmless from any and all tax consequences, including interest, penalties, fines or attorney's fees, arising out of the payment to them of their Gross Settlement Payments. The Gross Settlement Payments are the total and sole consideration to be paid by Defendants to Plaintiffs and their counsel for this Agreement and include all costs and attorney's fees. It is expressly understood that the Gross Settlement Payments are paid to and accepted by Plaintiffs in full settlement of all alleged damages arising out of the subject matter of this Agreement, whether known or unknown and whether or not ascertainable at the time of the execution of this Agreement. Plaintiffs also understand that their entitlement to and retention of the benefits mentioned herein are expressly conditioned upon Plaintiffs' fulfillment of the promises herein.

4. **General Releases.** In further consideration of the foregoing, Plaintiffs do hereby knowingly and voluntarily release and forever discharge, both jointly and severally, Wilkinson, Fronek, Hale, and the Company, and the Company's current and former officers, directors, employees, attorneys, servants, agents, representatives and insurers, together with their predecessors, successors and assigns (hereinafter collectively referred to as "Releasees"), from any and all actions, causes of action, suits, debts, dues, sums of money, accounts, damages, judgments, claims and demands whatsoever, in law or in equity (hereinafter collectively referred to as "Released Claims"), whether known or unknown, which Plaintiffs ever had, now have, or may or might in the future have against the Releasees, arising out of events or occurrences arising at or before the moment Plaintiffs sign this Agreement, including, but not limited to: (i) those claims

which were or could have been asserted in the Litigation; (ii) those claims arising under the FLSA; (iii) those claims arising under the Age Discrimination in Employment Act of 1967 ("ADEA"), as amended by the Older Workers Benefit Protection Act ("OWBPA"); (iv) those claims arising under Title VII of the Civil Rights Act of 1964; (v) those claims arising under 42 U.S.C. § 1981; (vi) those claims arising under the Civil Rights Act of 1991; (vii) those claims arising under the Americans with Disabilities Act of 1990, as amended by the ADA Amendments Act of 2008; (viii) those claims arising under the Rehabilitation Act of 1973; (ix) those claims arising under the Equal Pay Act of 1963; (x) those claims arising under the Genetic Information Nondiscrimination Act of 2008; (xi) those claims arising under the Family and Medical Leave Act of 1993 ("FMLA"); (xii) those claims arising under the National Labor Relations Act, as amended by the Labor-Management Relations Act ("NLRA"); (xiii) those claims arising under the Employee Retirement Income Security Act of 1974; (xiv) those claims arising under the Worker Adjustment and Retraining Notification Act of 1988; (xv) those claims arising under any other federal or state fair employment practices or wage and hour statute, or any ordinance promulgated by any county, municipality, or other state or federal subdivision; (xvi) those claims for retaliatory or wrongful discharge of any kind; (xvii) those claims for intentional or negligent infliction of emotional distress or outrageous conduct; (xviii) those claims for breach of contract (express or implied, in fact or in law, oral or written), or any duty or implied covenant of good faith and fair dealing; (xix) those claims for breach of fiduciary duty, fraud, misrepresentation, breach of right of privacy, libel, slander, defamation or tortious conduct of any kind; (xx) those claims for interference with business relationships, contractual relationships, or employment relationships of any kind; (xxi) those claims arising from or in reliance upon any statute, regulation, rule or ordinance (local, state or federal); (xxii) any and all other claims arising under law or in equity; and (xxiii) any and all other claims which Plaintiffs ever had, now have, or may or might in the future have arising by reason of or in any way connected with any relationship which may have existed prior to or on the date hereof between Plaintiffs and the Company, Wilkinson, Fronek, or Hale, the termination of that relationship, or the decision to terminate that relationship; provided, however, that this Agreement does not waive rights or claims that may arise after the date the Agreement is executed.

    a.    Without limiting the generality of the foregoing, Plaintiffs hereby certify that they have received all leave benefits due them, and acknowledge that they are not aware of any facts that would state claims by them against the Releasees arising under the FMLA or NLRA.

    b.    Plaintiffs warrant that they have not filed or assigned or transferred to any other person any claim released in this Section. In the event of such filing, assignment, or transfer, Plaintiffs agree to indemnify and hold harmless the Releasees from and against any liability, loss, cost (including attorney's fees), expense, settlement, or judgment arising out of such filing, assignment, or transfer.

    c.    Plaintiffs further acknowledge and covenant that, in consideration for the agreements and commitments set forth herein, they have knowingly relinquished, waived and forever released any and all damages and remedies which might otherwise be available to them, including, without limitation, claims for contract or tort damages of any type, claims for legal or equitable relief under either federal or state statutory and common law,

4

claims for backpay or front pay, compensatory damages, punitive damages, liquidated damages, expense reimbursement, reinstatement and recovery of attorney's fees.

5. **Covenants Not to Sue.** Plaintiffs further acknowledge and covenant not to sue the Releasees, or to participate or aid in any way in any suit or proceeding or to execute, seek to impose, collect or recover upon, or otherwise enforce or accept any judgment, decision, award, warrant or attachment upon any claim released by them herein. Plaintiffs also acknowledge and covenant that they understand that after signing this Agreement, they cannot proceed against any Releasee with respect to or on account of any of the matters referred to in it; provided, however, that this covenant does not affect Plaintiffs' right to test the knowing and voluntary nature of the Agreement in court under the OWBPA; provided further, that this Agreement does not prohibit Plaintiffs from filing a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") or any other federal, local or state agency, although Plaintiffs agree and acknowledge that they have waived, and shall not collect, any monetary benefits if the EEOC or other federal, state or local agency pursues a suit on their behalf against the Releasees. In the event that Plaintiffs prevail in any claim brought against any Releasee arising under the ADEA, the Parties agree that such Releasee shall be entitled to offset all amounts paid under this Agreement against any amount recovered by Plaintiffs.

A "covenant" not to sue is a legal term that means a party promises not to file a lawsuit against another in court. It is different from the General Release of claims contained in Section 4 of this Agreement. In exchange for the consideration described in Sections 1 and 2 and other good and valuable consideration, the receipt and sufficiency of which is acknowledged, Plaintiffs further agree never to sue any of the Releasees for any of the Released Claims. Plaintiffs also agree that they will not join or consent to opt into any certified or conditionally-certified class or collective action, or any other multi-party litigation, against any Releasee involving any of the Released Claims. Likewise, Plaintiffs agree that they will opt-out or otherwise withdraw from any such litigation to which they become a member or participant.

If Plaintiffs violate this covenant by suing any of the Releasees for any Released Claims, Plaintiffs shall be liable to such Releasees as are party to such lawsuit for their reasonable attorney's fees and other litigation costs incurred in defending against such lawsuit. Alternatively, if Plaintiffs sue any of the Releasees for any Released Claims, that Plaintiffs may be required, at the option of such Releasee, to return all but One Hundred Dollars and No Cents ($100.00) of the consideration paid to Plaintiffs pursuant to this Agreement, which amount Plaintiffs acknowledge constitutes good and valuable consideration for the promises and covenants in this Agreement.

Nothing in this Section 5 shall apply to prohibit Plaintiffs from suing to enforce the terms of this Agreement. Nothing in this Section 5 precludes or restricts the Company from seeking any and all damages, injunctive relief, or other remedies against Plaintiffs for violation of any section of this Agreement. Plaintiffs acknowledge and agree that the covenant not to sue in this Section 5 is an essential and material term of this Agreement without which the Parties could not have reached a settlement. Plaintiffs affirm that they understand and acknowledge the significance and consequence of this Section 5.

6. **OWBPA Acknowledgments.**

   a. Plaintiffs acknowledge and agree that the consideration being provided them in exchange for this Agreement is in addition to anything of value to which they already are entitled.

   b. Plaintiffs are hereby advised in writing to consult with an attorney prior to executing the Agreement.

   c. Plaintiffs acknowledge and agree that they had a period of twenty-one (21) days within which to consider the Agreement.

   d. Plaintiffs acknowledge that for a period of seven (7) days following their execution of this Agreement, they may revoke the Agreement by mailing written notice of their revocations to the Company c/o Michelle W. Johnson, Nelson Mullins Riley & Scarborough LLP, Atlantic Station / 201 17th Street, NW / Suite 1700, Atlanta, Georgia 30363. The Agreement shall not become effective or enforceable until the first day after the latest revocation period has expired and the Court has approved the settlement (the "Effective Date").

   e. Plaintiffs acknowledge and agree that they have read and understand all the terms and conditions of the Agreement; that they were not coerced, pressured or forced in any way by the Defendants or anyone else to accept the terms of this Agreement; and that they are entering into this Agreement knowingly and voluntarily, and without promise or benefit other than as set forth herein.

7. **Settlement Approval.** Upon the full execution of this Agreement (and provided that Plaintiffs do not revoke it as set forth herein), the Parties shall cause to be completed, executed and filed in the Litigation a Joint Motion for Settlement Approval, consistent with this Agreement and in the form attached hereto as Exhibit A. Until the settlement payments are made, the Court shall retain jurisdiction of the Litigation for the purpose of enforcing the terms of this Agreement.

8. **Waiver of Reemployment.** Plaintiffs covenant that they will never knowingly apply for or accept employment with the Company or any affiliate of the Company. Plaintiffs acknowledge and agree that in the event that they apply for employment with any of these entities, such application shall constitute a breach of this Agreement, and such breach shall be a legitimate, non-discriminatory and non-retaliatory reason for any refusal to hire them. Plaintiffs further acknowledge and agree that in the event that they are mistakenly rehired by any of these entities, such acceptance of employment shall constitute a breach of this Agreement, and such breach shall be a legitimate, non-discriminatory and non-retaliatory reason for their termination, without cause, without notice, and without recourse available to them against these entities. Plaintiffs further agree that they will not assert, file or prosecute any charge or claim against the Company or any affiliate based on this Section.

9. **Denial of Wrongdoing.** It is further understood and agreed that the payment and benefits conferred herein are not to be construed as an admission of liability on the part of the persons, corporations and entities hereby released, by whom liability is expressly denied.

10. **Non-Admission.** This Agreement is entered into solely in order to compromise and settle disputed claims, without any acquiescence, acknowledgement, or agreement by any Party as to the merit of any actions, causes of action, suits, debts, dues, sums of money, accounts, damages, expenses, attorney's fees, costs, punitive damages, penalties, judgments, claims or demands released herein. Neither this Agreement nor any part thereof shall be, or be used as, evidence or an admission of liability by anyone, at any time, for any purpose.

11. **Basis for Settlement.** Each Party acknowledges and agrees that the terms of this Agreement are, and have been agreed to, for their mutual convenience, in part to avoid the expense, distraction, risk and uncertainty of further litigation, and after considering the risks of litigation and the circumstances of their respective businesses. Each Party also acknowledges and agrees that he, she, or it has relied entirely on his, her, or its own judgment, belief and knowledge (including its judgment, belief and knowledge with respect to the foregoing, the extent and duration of the claimed damages in the Litigation, and the value of settling the Litigation at this time) and the advice and recommendations of his, her, or its own independently selected counsel, and, accordingly, except as set forth herein, neither they nor anyone acting on their behalf shall (or shall have the right to) deny or challenge the validity of this Agreement or any of the obligations of the Parties hereunder.

12. **Construction.** This Agreement has been negotiated by the Parties and shall be interpreted fairly in accordance with its terms and without any construction in favor of or against any of the Parties. The interpretation and construction of this Agreement shall be subject to the following provisions: (a) words importing the singular meaning include where the context so admits the plural meaning and vice versa; (b) the terms "and" and "or" as used herein shall mean both the conjunctive and the disjunctive, so that one word or the other may be taken accordingly as the one or the other (i.e., "and/or"); (c) the word "any" shall mean "all" or "one out of several"; (d) references to any person shall include natural persons and partnerships, firms and other incorporated bodies and all other legal persons of whatever kind and however constituted; (e) the words "include," "includes" and "including" are to be construed as if they were immediately followed by the words "without limitation"; and (f) captions and headings used herein are inserted for convenience only and are in no way intended to describe, interpret, define or limit the scope, extent or intent of this Agreement.

13. **Successors and Assigns.** This Agreement shall be binding upon and inure to the benefit of the Parties and their heirs, executors, administrators, conservators, assigns, successors, beneficiaries, employees and agents, and all other persons asserting claims by, on behalf of, or through them based or founded upon any of the claims released herein.

14. **Waiver.** Failure by any Party to insist upon strict performance of any provision herein by any other Party shall not be deemed a waiver by such Party of its rights or remedies or a waiver by it of any subsequent default by such other Party, and no waiver shall be effective unless it is in writing and duly executed by the Party entitled to enforce the provision being waived.

15. **Severability.** In the event that any term, covenant, condition, agreement, section or provision hereof shall be deemed invalid or unenforceable, this Agreement shall not terminate or be deemed void or voidable, but shall continue in full force and effect and there shall be substituted for such stricken provision a like but legal and enforceable provision which most nearly accomplishes the intention of the Parties hereto.

16. **Entire Agreement.** This Agreement constitutes the entire agreement between the Parties regarding the subject matter set forth herein, and all prior statements, negotiations, representations or warranties are expressly merged herein. Except as set forth in this Agreement, no Party has relied upon the representations of another Party to induce them to enter into this Agreement. It is expressly understood and agreed that this Agreement may not be altered, amended, waived, modified or otherwise changed in any respect or particular whatsoever except by writing duly executed by authorized representatives of the Parties.

17. **Choice of Law and Forum Selection.** This Agreement will be interpreted under and is governed by the laws of the State of Georgia without regard to conflicts of laws principles. The Parties (a) hereby irrevocably submit themselves to and consent to the exclusive jurisdiction of the Court (or, if the Court lacks jurisdiction, the appropriate state or superior courts of the state of Georgia) for the purposes of any action, claim, suit or proceeding arising from or relating to this Agreement, and (b) hereby waive, and agrees not to assert, by way of motion, as a defense or otherwise, in any such action, claim, suit or proceeding, any argument that he, she or it is not personally subject to the jurisdiction of such court(s), that the action, claim, suit or proceeding is brought in an inconvenient forum, or that the venue of the action, claim, suit or proceeding is improper.

18. **Counterparts.** This Agreement may be executed in separate counterparts, each of which shall constitute an original. Facsimile or electronic signatures shall be treated as originals.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

The undersigned acknowledges that she has read and understands the foregoing Settlement Agreement and General Release, and that the undersigned agrees to the same and voluntarily executes the same this __6th__ day of _____April_____, 2017.

FANNIE K. BLOODWORTH

_____
Signature

4-06-17
_____
Date

The undersigned acknowledges that she has read and understands the foregoing Settlement Agreement and General Release, and that the undersigned agrees to the same and voluntarily executes the same this _11th_ day of _April_, 2017.

TANIKA THOMAS-COOLEY

_Tenika Thomas-Cooley_
Signature

_April - 11 - 2017_
Date

The undersigned acknowledges that its authorized signatory has read and understands the foregoing Settlement Agreement and General Release, and that the undersigned agrees to the same and voluntarily executes the same this 7TH day of April, 2017.

ELKS AIDMORE INCORPORATED

*Abe Wilkinson*
Signature

Abe Wilkinson
Print Name

CEO
Title

4/7/17
Date

The undersigned acknowledges that he has read and understands the foregoing Settlement Agreement and General Release, and that the undersigned agrees to the same and voluntarily executes the same this 7th day of April, 2017.

ABE WILKINSON

*Abe Wilkinson* (signature)
Signature

4/7/17
Date

The undersigned acknowledges that she has read and understands the foregoing Settlement Agreement and General Release, and that the undersigned agrees to the same and voluntarily executes the same this 7th day of April, 2017.

VICKEY HALE

_____
Signature

4/7/2017
_____
Date

The undersigned acknowledges that she has read and understands the foregoing Settlement Agreement and General Release, and that the undersigned agrees to the same and voluntarily executes the same this 7 day of April, 2017.

ANDREA FRONEK

*Andrea Fronek*
Signature

04/07/2017
Date